# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

IRMA FANTASIA,

                   *Plaintiff,*

    v.

MONTEFIORE NEW ROCHELLE,

                   *Defendant*.

**Civil Action No.:  19-cv-11054**

**COMPLAINT**

Plaintiff Irma Fantasia, through his counsel, states her Complaint against Defendant Montefiore New Rochelle:

## INTRODUCTION

1.      This case arises out of Defendant's failure to provide effective communication through sign-language interpreters for Irma Fantasia ("Fantasia") during her hospital stay.

2.      Fantasia is profoundly deaf, requiring an American Sign Language interpreter to facilitate effective communication.[1] Under federal regulations, a public accommodation is required to provide "appropriate auxiliary aids" to a deaf person, either as a patient or a companion, "where necessary to ensure effective communication." 28 C.F.R. § 36.303(c)(1)(i).

3.      Defendant hindered and prevented Fantasia from benefitting from its services and discriminated against her unlawfully on the basis of her disability of deafness by refusing to provide the ASL interpreters that she required to facilitate effective communication.

4.      It is evident that Defendant has failed to implement policies, procedures, and practices respecting the civil rights and communication needs of deaf people. Fantasia brings this lawsuit to compel Defendant to cease unlawful discriminatory practices and implement policies

---

[1] An individual is "profoundly deaf" if he or she is "unable to hear any sound below 95 decibels in one's better ear." https://www.dictionary.com/browse/profoundly-deaf.

and procedures that will ensure effective communication, full and equal enjoyment, and a meaningful opportunity for deaf people to participate in and benefit from Defendant's health care services.

5.      Fantasia bring this action seeking compensatory and punitive damages; declaratory, injunctive, and equitable relief; and attorney's fees and costs to redress Defendant's unlawful discrimination against her on the basis of his disability in violation of Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12181 *et seq.*; Section 504 of the Rehabilitation Act of 1973 ("RA"), 29 U.S.C. § 794; Section 1557 of the Patient Protection and Affordable Care Act ("ACA"), 42 U.S.C. § 18116; and the New York Human Rights Law ("NYHRL").

## PARTIES

6.      Plaintiff Irma Fantasia is a resident of Goshen, New York, who is substantially limited in the major life activities of hearing and speaking. Thus, she has a "disability" within the meaning of state and federal civil rights laws.

7.      Defendant Montefiore New Rochelle Hospital is a corporation with a corporate address at 16 Guion Pl, New Rochelle, NY 10801. Upon information and belief, Defendant is a recipient of federal financial assistance, including Medicare and Medicaid reimbursements.

## JURISDICTION AND VENUE

8.      This Court has subject matter jurisdiction for the federal-law claims under 28 U.S.C. §§ 1331 and 1343 because this action arises under the laws of the United States. This Court also has supplemental jurisdiction for the state-law claims under 28 U.S.C. § 1367 because those claims are substantially related to the federal-law claims.

9.      Venue is proper in this District under 28 U.S.C. § 1391(b) because, among other things, Defendant resides in this District and the acts and omissions giving rise to this Complaint occurred in this District.

## STATEMENT OF FACTS

10.     Irma Fantasia is a profoundly deaf individual who communicates primarily in American Sign Language or "ASL."

11.     Her deafness affected his ability to learn and acquire language from an early age, and as a result, she has difficulty communicating in English in oral mediums.

12.     Some background on deaf culture is necessary to understand the balance of this case. English and ASL are different languages.

13.     Relatedly, Fantasia is unable to effectively communicate by reading lips.

14.     Lip reading is the ability to understand the speech of another by watching the speaker's lips. It is no substitute for direct communication through a qualified sign language interpreter because many mouth movements appear identical on the lips. What is more, even if a primary ASL user were able to determine the sounds appearing on a speaker's lips, he or she would still not necessarily understand the English language because English and ASL are distinct languages with different grammatical structures. As another example, ASL and French Sign Language are also distinct languages.

15.     On April 12, 2018, Fantasia, a woman in her 80's, went to the emergency room because she was experiencing dizziness, shaking and could barely walk. She was concerned her condition could be fatal.

16.     Upon arrival, Fanatsia and her daughter, made repeated request for an American Sign Language Interpreter, yet no effort to obtain one was made.

17.     Despite repeated requests for a qualified sign language interpreter, the staff forced Fantasia's daughter to interpreter on her behalf, despite being told that is was not appropriate and was against the law.

3

18.     Fantasia's daughter stressed the importance of on-site interpreters, especially for complex medical issues.

19.     Defendant's actions caused worry and distress that distracted Fantasia from her medical care.

20.     The lack of interpreters exacerbated Fantasia's condition, and she suffered the protracted humiliation of not understanding her medical care.

21.     Fantasia was ultimately discharged on April 13, 2017 with no interpreters being provided.

22.     Defendant knew or should have known of their obligations as healthcare providers under the ADA, the RA, and their equivalents to develop policies to promote compliance with these statutes and to provide reasonable accommodations, including the provision of ASL interpreters to ensure effective communication with deaf people.

23.     Defendant's staff knew or should have known that their actions and inactions created an unreasonable risk of causing Fantasia greater levels of fear, anxiety, indignity, humiliation, and emotional distress than a hearing person would be expected to experience.

24.     Nonetheless, Defendant prevented Fantasia from benefitting from its services by failing to provide the ASL interpreters necessary for her.

25.     In doing so, Defendant intentionally discriminated against Fantasia, acting with deliberate indifference to her federally protected rights.

26.     Defendant's wrongful and intentional discrimination against Fantasia on the basis of disability is reflected by Defendant's failure to train employees and promulgate policies of non-discrimination against deaf and hard of hearing individuals.

27.     Fantasia is entitled to equal access to services offered by Defendant as are enjoyed

4

by non-disabled persons.

28.    Fantasia wishes to seek care in Defendant's hospital again. Monefiore New Rochelle Hospital is the closest hospital to her home. But right now she is aware of discriminatory barriers to access at Defendant's hospital and is thus deterred from accessing its healthcare services because of the discrimination she has faced and expects to face going forward. Future harm is not speculative because Defendant generally refused to make in-person ASL interpreters available to ensure effective communication.

29.    Defendant's willful, knowing, and repeated acts of intentional discrimination against Fantasia evince a pattern and practice of discrimination that violated state and federal antidiscrimination laws that caused her to suffer humiliation, anxiety, and other emotional distress.

## CAUSES OF ACTION

**CLAIM I:    Violations of Title III of the Americans with Disabilities Act**

30.    Fantasia incorporates by reference all preceding paragraphs and realleges them in support of this claim.

31.    At all times relevant to this action, Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 *et seq.*, has been in full force and effect and has applied to Defendant's conduct.

32.    At all times relevant to this action, Fantasia has been substantially limited in the major life activities of "hearing" and "speaking" and thus has a disability within the meaning of the ADA. 42 U.S.C. § 12102(2).

33.    Defendant owns, leases, or operates a place of public accommodation within the meaning of Title III of the ADA. 42 U.S.C. § 12181(7)(F).

34.    Title III of the ADA provides that no "individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges,

advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a).

35.     Title III of the ADA defines discrimination to include "a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services." 42 U.S.C. § 12182(b)(2)(A)(iii).

36.     Under Title III of the ADA, it "shall be discriminatory to exclude or otherwise deny equal goods, services, facilities, privileges, advantages, accommodations, or other opportunities to an individual or entity because of the known disability of an individual with whom the individual or entity is known to have a relationship or association." 42 U.S.C. § 12182(b)(1)(E).

37.     Federal regulations implementing Title III of the ADA provide that "[a] public accommodation shall furnish appropriate auxiliary aids and services where necessary to ensure effective communication with individuals with disabilities. This includes an obligation to provide effective communication to companions who are individuals with disabilities." 28 C.F.R. § 36.303(c).

38.     "The key to communicating effectively is to consider the nature, length, complexity, and context of the communication and the person's normal method(s) of communication." ADA Requirements – Effective Communication, U.S. Dep't of Justice, *available at* http://www.ada.gov/effective-comm.htm (last visited May 31, 2019) ("DOJ Rules"), at 1.

39.     "In a doctor's office," for example, "an interpreter generally will be needed for taking the medical history of a patient who uses sign language or for discussing a serious diagnosis and its treatment options." DOJ Rules at 3.

40.     "Title III entities are ***encouraged*** to consult with the person with a disability to

discuss what aid or service is appropriate. The goal is to provide an aid or service that will be effective, given the nature of what is being communicated and the person's method of communicating." DOJ Rules at 4 (emphasis in original).

41.     Defendant discriminated against Fantasia on the basis of his disability in violation of Title III of the ADA and its implementing regulations.

42.     "A critical and often overlooked component of ensuring success[ful] communication is comprehensive and ongoing staff training. Covered entities may have established good policies, but if front line staff are not aware of them or do not know how to implement them, problems can arise. Covered entities should teach staff about the ADA's requirements for communicating effectively with people who have communication disabilities." DOJ Rules at 4.

43.     Defendant has failed to implement policies, procedures, and training of staff necessary to ensure compliance with Title III of the ADA and its implementing regulations.

44.     Fantasia is entitled to injunctive relief and an award of attorney's fees, costs, and disbursements under the ADA. 42 U.S.C. § 12188(a)(1)–(2); 42 U.S.C. § 2000a-3.

**CLAIM II:    Violations of Section 504 of the Rehabilitation Act**

45.     Fantasia incorporates by reference all preceding paragraphs and realleges them in support of this claim.

46.     At all times relevant to this action, Section 504 of the Rehabilitation, 29 U.S.C. § 794, has been in full force and effect and has applied to Defendant's conduct.

47.     At all times relevant to this action, Fantasia has had substantial limitations to the major life activities of hearing and speaking and has been an individual with a disability within the meaning of the Rehabilitation Act. 29 U.S.C. § 705(9); 42 U.S.C. § 12102(2).

48.     At all times relevant to this action, Defendant has been a program or activity

7

receiving federal financial assistance under 29 U.S.C. § 794(b).

49.     Section 504 of the Rehabilitation Act provides that no "otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794.

50.     Defendant discriminated against Fantasia solely on the basis of her disability by denying her meaningful access to the services, programs, and benefits Defendant offers to other individuals and by refusing to provide auxiliary aids and services necessary to ensure effective communication in violation of Section 504 of the Rehabilitation Act.

51.     Defendant has failed to implement policies, procedures, and training of staff necessary to ensure compliance with the Rehabilitation Act and its implementing regulations.

52.     Fantasia is entitled to injunctive relief; attorney's fees, costs, and disbursements; and compensatory damages for the injuries and loss she sustained as a result of Defendant's discriminatory conduct and deliberate indifference under 29 U.S.C. § 794a.

**CLAIM III:   Violations of the Patient Protection and Affordable Care Act**

53.     Fantasia incorporates by reference all preceding paragraphs and realleges them in support of this claim.

54.     At all times relevant to this action, Section 1557 of the Patient Protection and Affordable Care Act has been in full force and effect and has applied to Defendant's conduct.

55.     At all times relevant to this action, Fantasia has had substantial limitations to the major life activities of hearing and speaking and has been an individual with a disability within the meaning of Section 1557 of the Patient Protection and Affordable Care Act, 42 U.S.C. § 18116.

56.     At all times relevant to this action, Fantasia's primary language for communication has been American Sign Language, and she "has a limited ability to read, write, speak, or

understand English." 45 C.F.R. § 92.4. He has thus been an individual with limited English proficiency within the meaning of Section 1557 of the Patient Protection and Affordable Care Act.

57.     At all times relevant to this action, Defendant received federal financial assistance, including Medicare and Medicaid reimbursements, and has been principally engaged in the business of providing health care. Thus, Defendant is a health program or activity receiving federal financial assistance under 42 U.S.C. § 18116(a).

58.     Under Section 1557 of the Patient Protection and Affordable Care Act, "an individual shall not, on the ground prohibited under . . . section 504 of the Rehabilitation Act of 1973 (29 U.S.C. § 794), be excluded from participation in, be denied the benefits of, or be subjected to discrimination under, any health program or activity, any part of which is receiving Federal financial assistance." 42 U.S.C. § 18116.

59.     Federal regulations implementing Section 1557 of the Patient Protection and Affordable Care Act provide that a "covered entity shall take reasonable steps to provide meaningful access to each individual with limited English proficiency eligible to be served or likely to be encountered in its health programs and activities." 45 C.F.R. § 92.201(a).

60.     Federal regulations implementing Section 1557 of the Patient Protection and Affordable Care Act provide that (1) a "covered entity shall offer a qualified interpreter to an individual with limited English proficiency when oral interpretation is a reasonable step to provide meaningful access for that individual with limited English proficiency" and (2) a "covered entity shall use a qualified translator when translating written content in paper or electronic form." 45 C.F.R. § 92.201(d)(1)–(2).

61.     Federal regulations implementing Section 1557 of the Patient Protection and Affordable Care Act provide that a "covered entity that provides a qualified interpreter for an

individual with limited English proficiency through video remote interpreting services in the covered entity's health programs and activities shall provide" (1) "[r]eal-time, full-motion video and audio over a dedicated high-speed, wide-bandwidth video connection or wireless connection that delivers high-quality video images that do not produce lags, choppy, blurry, or grainy images, or irregular pauses in communication, (2) a "sharply delineated image that is large enough to display the interpreter's face and the participating individual's face regardless of the individual's body position," (3) a "clear, audible transmission of voices," and (4) "[a]dequate training to users of the technology and other involved individuals so that they may quickly and efficiently set up and operate the video remote interpreting." 45 C.F.R. § 92.201(f)(1)–(4).

62.     Federal regulations implementing Section 1557 of the Patient Protection and Affordable Care Act provide that a "covered entity shall take appropriate steps to ensure that communications with individuals with disabilities are as effective as communications with others in health programs and activities." 45 C.F.R. § 92.202(a).

63.     Federal regulations implementing Section 1557 of the Patient Protection and Affordable Care Act provide that a "[covered] entity shall furnish appropriate auxiliary aids and services where necessary to afford individuals with disabilities, including applicants, participants, companions, and members of the public, an equal opportunity to participate in, and enjoy the benefits of, a service, program, or activity of a [covered] entity. . . . In determining what types of auxiliary aids and services are necessary, a [covered] entity shall give primary consideration to the requests of individuals with disabilities. In order to be effective, auxiliary aids and services must be provided in accessible formats, in a timely manner, and in such a way as to protect the privacy and independence of the individual with a disability." 45 C.F.R. § 92.202(a); 28 C.F.R. § 35.160(b).

64.     As set forth above, Defendant discriminated against Fantasia on the basis of her disability in violation of the Patient Protection and Affordable Care Act and its implementing regulations.

65.     The Patient Protection and Affordable Care Act, by incorporating the enforcement mechanism of the Rehabilitation Act, extends a cause of action to Fantasia—that is, "any person aggrieved" by discrimination in violation of the Rehabilitation Act. 42 U.S.C. § 18116(a).

66.     Defendant has failed to implement policies, procedures, and training of staff necessary to ensure compliance with the Patient Protection and Affordable Care Act.

67.     Fantasia is entitled to injunctive relief; attorney's fees, costs, and disbursements; and compensatory damages for the injuries and loss they sustained as a result of Defendant's discriminatory conduct and deliberate indifference as alleged under 42 U.S.C. § 18116(a).

**CLAIM IV:   Violations of the New York Human Rights Law**

68.     Fantasia incorporates by reference all preceding paragraphs and realleges them in support of this claim.

69.     At all times relevant to this action, the New York Human Rights Law has been in full force and effect and has applied to Defendant's conduct.

70.     At all times relevant to this action, Fantasia has had substantial impairments to the major life activities of hearing and speaking and thus is a qualified individual with a disability within the meaning of N.Y. Exec. Law § 292(21).

71.     At all times relevant to this action, Defendant's facilities have been places of public accommodation within the meaning of N.Y. Exec. Law § 292(9).

72.     Under N.Y. Exec. Law § 296(2)(a), it "shall be an unlawful discriminatory practice for any person, being the owner, lessee, proprietor, manager, superintendent, agent or employee of any place of public accommodation . . . because of the . . . disability . . . of any person, directly

or indirectly, to refuse, withhold from or deny to such person any of the accommodations, advantages, facilities or privileges thereof . . . to the effect that any of the accommodations, advantages, facilities or privileges of any such place shall be refused, withheld from or denied to any person on account of . . . disability. . . or that the patronage or custom threat of any person of . . . or having a disability is unwelcome, objectionable or not acceptable, desired or solicited."

73.     Under N.Y. Exec. Law § 296(2)(c)(i), discrimination includes "a refusal to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford facilities, privileges, advantages or accommodations to individuals with disabilities."

74.     Defendant discriminated against Fantasia by withholding the accommodations, advantages, facilities or privileges of Defendant's place of public accommodation in violation of N.Y. Exec. Law § 296(2)(a) and by failing to effectively accommodate his disability in violation of N.Y. Exec. Law § 296(2)(c)(i).

75.     Defendant further discriminated against her by failing to ensure effective communication through an in-person interpreter.

76.     Without injunctive relief, there is a clear risk that Defendant's actions will recur with Fantasia or other deaf and hard of hearing individuals.

77.     Fantasia is entitled to injunctive relief and compensatory damages for the injuries and loss sustained as a result of Defendant's discriminatory conduct under N.Y. Exec. Law § 297(9).

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Fantasia respectfully prays:

A.     Enter a declaratory judgment under Rule 57 of the Federal Rules of Civil Procedure,

stating that Defendant's policies, procedures, and practices have subjected Plaintiff to unlawful discrimination in violation of Title III of the Americans with Disabilities Act, Section 504 of the Rehabilitation Act, Section 1557 of the Patient Protection and Affordable Care Ac, and the New York Human Rights Law.

B.      Issue an injunction forbidding Defendant from implementing or enforcing any policy, procedure, or practice that denies deaf or hard of hearing individuals or their companions, meaningful access to and full and equal enjoyment of Defendant's facilities, services, or programs;

C.      Issue an injunction ordering Defendant:

       i.      to develop, implement, promulgate, and comply with a policy requiring that when a deaf or hard of hearing individual requests an in-person interpreter for effective communication, one will be provided as soon as practicable in all services offered by Defendant;

      ii.     to develop, implement, promulgate, and comply with a policy to ensure that Defendant will notify individuals who are deaf or hard of hearing of their right to effective communication. This notification will include posting explicit and clearly marked and worded notices that Defendant will provide sign language interpreters, videophones, and other communication services to ensure effective communication with deaf or hard of hearing persons;

      iii.    to develop, implement, promulgate, and comply with a policy to ensure that deaf or hard of hearing individuals are able to communicate through the most appropriate method under the circumstances, recognizing that the Video Remote Interpreting System is not appropriate in all medical situations;

      iv.     to develop, implement, promulgate, and comply with a policy to ensure, in

the event Defendant use a Video Remote Interpreting System that has a high-speed Internet connection; a video screen with appropriate size, position, capture angle, focus, and proximity to the deaf individual; and appropriate audio quality. When possible, the equipment should be portable and made available to the patient where the patient is located, preferably in a private room to minimize distractions and maintain confidentiality;

    v.  to train all their employees, staffs, and other agents on a regular basis about how to properly use a Video Remote Interpreting System, including how to set it up and how to obtain technical assistance in case of system malfunction or failure, and how to obtain interpreters when reasonably requested by deaf or hard of hearing individuals;

    vi.  to create and maintain a list of sign language interpreters and ensure availability of such interpreters at any time of day or night;

    vii.  to train all employees, staff, and other agents on a regular basis about the rights of individuals who are deaf or hard of hearing under the ADA, the RA, the ACA, the and the NYHRL,

D.    Award to Plaintiff:

    i.  Compensatory damages under the RA, the ACA, and the NYHRL

    ii.  Reasonable costs and attorney's fees under the ADA, the RA, the and the ACA

    iii.  Interest on all amounts at the highest rates and from the earliest dates allowed by law;

    iv.  Any and all other relief that this Court finds necessary and appropriate.

14

Dated: December 2, 2019

Respectfully submitted,

By:

Andrew Rozynski, Esq.
EISENBERG & BAUM, LLP
24 Union Square East, Fourth Floor
New York, NY 10003
Main: (212) 353-8700
Fax: (212) 353-1708
*Attorneys for Plaintiff*