UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x
IRMA FANTASIA,                                  :
                          Plaintiff,            :
                                                :        **OPINION AND ORDER**
v.                                              :
                                                :
MONTEFIORE NEW ROCHELLE,                         :        19 CV 11054 (VB)
                          Defendant.            :
--------------------------------------------------------------x

Briccetti, J.:

> Plaintiff Irma Fantasia brings this action against Montefiore New Rochelle, asserting
claims pursuant to Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12188;
Section 504 of the Rehabilitation Act, 29 U.S.C. § 794; Section 1557 of the Affordable Care Act
("ACA"), 42 U.S.C. § 18116; and the New York State Human Rights Law ("NYSHRL"), N.Y.
Exec. Law § 296(2).

> Now pending are the parties' cross-motions for summary judgment. Defendant moves to
dismiss the case in full. (Doc. #47). Plaintiff cross-moves for summary judgment on liability
and seeks a trial exclusively on damages. (Doc. #52).

> For the following reasons, defendant's motion is GRANTED IN PART and DENIED IN
PART, and plaintiff's cross-motion is DENIED.

> The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

## BACKGROUND

> The parties have submitted memoranda of law, declarations with exhibits, and statements
of undisputed material fact pursuant to Local Civil Rule 56.1, which together reflect the
following factual background.

> Plaintiff is deaf. Her primary language is American Sign Language ("ASL").

Defendant is a hospital in New Rochelle, New York, which receives federal financial assistance.

On April 12, 2017, plaintiff, who was then eighty-six years old, came to defendant's emergency department ("ED") complaining of dizziness.  She was accompanied by her daughter, Michele Bianchi.  Bianchi is a professional ASL interpreter, and she has worked in classrooms, senior centers, and in the White Plains Police Department.

In the ED, plaintiff was seen by triage nurse Peggy Sinkkonen, staff nurse Michael Giordano, and Dr. Philip Liju.

Next, plaintiff was admitted to the hospital's telemetry unit.  In the telemetry unit, she was seen by nurses Agnes Flores and Henrietta Sustento, Drs. Jiashan Wang and Prasanta Basak, and physical therapist Sau Lee Wong.

In each encounter with medical providers, Bianchi interpreted for plaintiff.  All providers made notes of their encounters with plaintiff, and these notes do not reflect that plaintiff or Bianchi requested an interpreter.  The notes also do not reflect that plaintiff expressed a preference for Bianchi to serve as her interpreter or that plaintiff was offered interpreting services.

Plaintiff was discharged on April 13, 2017, nearly twenty-four hours after she was admitted.

During plaintiff's hospital stay, defendant's policy was to provide deaf patients with sign-language interpreting services.  One such service was a video remote interpreting ("VRI") device called "Deaf Talk."

According to the policy, hospital staff were to note in a patient's medical chart when any interpreting service, including Deaf Talk, was offered, requested, or used.

The parties dispute two key facts:  (i) whether plaintiff or Bianchi requested interpreting services; and (ii) whether plaintiff's hospital stay was hampered by the absence of those services.

I.     <u>Requests for Interpretive Services</u>

Plaintiff offers evidence she and Bianchi repeatedly requested interpreting services but their requests were ignored or denied.  Plaintiff cites to her sworn interrogatory response, her deposition testimony, Bianchi's deposition testimony, and her sworn declaration.

In her interrogatory response, plaintiff states she and Bianchi:

asked for an American Sign Language interpreter from all of Defendant's employees they encountered, including doctors and nurses during triage and in the emergency room. . . .  Ms. Fantasia also gestured that she needed an interpreter.  In response to these repeated requests, some of Defendant's employees said that they would get an interpreter but never did.

(Doc. #53-12 ("Pl. Interrog. Resps."), at 2).

Plaintiff testified she saw Bianchi request an interpreter multiple times, and medical staff told her there was no interpreter available.  (Doc. #53-2 ("Pl. Dep."), at 40–42).

Bianchi testified that, on the way to the hospital, plaintiff told her she would need an interpreter.  (Doc. #53-3 ("Bianchi Dep."), at 58).  Bianchi also testified that, once at the hospital, she asked numerous people repeatedly for an interpreter, including a triage nurse, the providers who examined plaintiff in the ED, and various ED staff, but these requests were either ignored, deferred, or denied.  (<u>Id</u>. at 55–57, 62, 65–66, 69–72, 76–77).  Bianchi further testified, on multiple occasions, plaintiff "gestured" to medical staff she was deaf and needed an interpreter, but these requests were ignored.  (<u>Id</u>. at 63, 67–69).

In plaintiff's declaration, she states under oath that, when she arrived at the hospital and throughout her stay, she and Bianchi requested interpreters but their requests were ignored.  (Doc. #53-1 ("Pl. Decl."), ¶¶ 4–5).

Defendant offers evidence plaintiff and Bianchi did not request an interpreter and plaintiff preferred Bianchi interpret during the hospital stay.  Specifically, defendant cites to deposition testimony of hospital staff, plaintiff's medical records, and plaintiff and Bianchi's deposition testimony.

Triage nurse Sinkkonen testified that when she first met with plaintiff and Bianchi, Bianchi said she would interpret for plaintiff.  (Doc. #53-7 ("Sinkkonen Dep."), at 13, 17, 33). Nurse Flores testified when she first met with plaintiff and Bianchi, Bianchi volunteered to interpret.  (Doc. #53-10 ("Flores Dep."), at 38).  Flores further testified she understood from her interactions with plaintiff and Bianchi that plaintiff preferred Bianchi to interpret for her.  (Id. at 45–48).

Defendant also cites plaintiff's medical records, which the parties agree do not reflect that plaintiff or Bianchi requested an interpreter.  Defendant also points to plaintiff and Bianchi's deposition testimony that Bianchi regularly accompanies plaintiff to her doctor's visits to interpret for her without incident.

II.    <u>Plaintiff's Hospital Stay Without an Interpreter</u>

Plaintiff offers evidence her hospital stay was hampered by a lack of interpreter, specifically, her sworn interrogatory responses and sworn declaration, as well as Bianchi's deposition testimony.

In one interrogatory response, plaintiff states that, during her hospital stay, "[s]he had a very difficult time understanding her medical care, especially when her daughter . . . was not present."  (Pl. Interrog. Resps. at 7).

In another interrogatory response, plaintiff stated that using her daughter as an interpreter "prevent[ed] [her] from having equal participation in her medical care and having her daughter to

support her in a familial role," and that Bianchi's lack of experience interpreting in a medical setting meant plaintiff "could not express herself fully."  (Doc. #53-13, at 1).

In her declaration, plaintiff states that, during her hospital stay, she "did not feel comfortable expressing herself fully.  For example, [she] did not ask certain questions or share certain information with Montefiore staff because [she] did not want to further worry [her] daughter."  (Pl. Decl. ¶ 9).  Plaintiff further states she "would have participated more in [her] communications with Montefiore staff" if she had been provided an interpreter.  (Id. ¶ 10).

Finally, Bianchi testified that plaintiff "didn't want [Bianchi] to worry, so, she didn't want me to ask too many questions about her health."  (Bianchi Dep. at 110).

Defendant offers competing evidence that plaintiff's hospital stay was not hampered by a lack of interpreter, specifically, deposition testimony by plaintiff, Bianchi, and hospital staff.

Plaintiff testified she understood what was being communicated to her during the hospital stay (Pl. Dep. at 37) and Bianchi did a "good" job interpreting.  (Id. at 46).

Bianchi testified she never felt she could not accurately interpret for plaintiff and believed her mother effectively communicated during the hospital stay.  (Bianchi Dep. at 46–48).  Defendant also points to Bianchi's testimony that Bianchi is an experienced professional ASL interpreter, which plaintiff does not dispute.

Nurse Flores testified she had no difficulties communicating with plaintiff during her hospital stay and obtained all information she needed from plaintiff with Bianchi interpreting.  (Flores Dep. at 67).  Further, physical therapist Sau Lee Wong testified she had no difficulties communicating with plaintiff with Bianchi interpreting.  (Doc. #48-17, at 57).

**DISCUSSION**

I.    <u>Summary Judgment Standard</u>

The Court must grant a motion for summary judgment if the pleadings, discovery materials before the Court, and any affidavits show there is no genuine issue as to any material fact and it is clear the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986).[1]

A fact is material when it "might affect the outcome of the suit under the governing law." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).  A dispute about a material fact is genuine if there is sufficient evidence upon which a reasonable jury could return a verdict for the non-moving party.  <u>See id</u>.  It is the moving party's burden to establish the absence of any genuine issue of material fact.  <u>Zalaski v. Bridgeport Police Dep't</u>, 613 F.3d 336, 340 (2d Cir. 2010).

If the non-moving party fails to make a sufficient showing on an essential element of its case on which it has the burden of proof, then summary judgment is appropriate.  <u>Celotex Corp. v. Catrett</u>, 477 U.S. at 323.  If the non-moving party submits "merely colorable" evidence, summary judgment may be granted.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. at 249–50.  The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts and may not rely on conclusory allegations or unsubstantiated speculation." <u>Brown v. Eli Lilly & Co.</u>, 654 F.3d 347, 358 (2d Cir. 2011).  "[T]he mere existence of a scintilla of evidence" supporting the non-moving party's position is likewise insufficient; there must be

---

[1]    Unless otherwise indicated, case quotations omit all internal citations, quotations, footnotes, and alterations.

evidence on which the jury could reasonably find for it.  Dawson v. County of Westchester, 373 F.3d 265, 272 (2d Cir. 2004).

On summary judgment, the Court construes the facts, resolves all ambiguities, and draws all permissible factual inferences in favor of the non-moving party.  Dallas Aerospace, Inc. v. CIS Air Corp., 352 F.3d 775, 780 (2d Cir. 2003).  If "there is any evidence from which a reasonable inference could be drawn in favor of the non-moving party" on the issue on which summary judgment is sought, "summary judgment is improper."  See Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc., 391 F.3d 77, 82–83 (2d Cir. 2004).

Further, the Court may not evaluate the credibility of witness testimony on summary judgment; this assessment is exclusively the province of the jury.  See Fincher v. Depository Tr. & Clearing Corp., 604 F.3d 712, 725–26 (2d Cir. 2010).

In deciding a motion for summary judgment, the Court need only consider evidence that would be admissible at trial.  Nora Beverages, Inc. v. Perrier Grp. of Am., Inc., 164 F.3d 736, 746 (2d Cir. 1998).  On summary judgment, however, evidence need not be "in a form that would be admissible at trial."  Celotex Corp. v. Catrett, 477 U.S. at 324.

Moreover, in deciding "cross-motions for summary judgment, a district court is not required to grant judgment for one side or the other.  Rather, the court must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration."  Heublein, Inc. v. United States, 996 F.2d 1455, 1461 (2d Cir. 1993).

II.    Americans With Disabilities Act Claim

Defendant contends plaintiff's ADA claim must be dismissed as moot because plaintiff no longer seeks injunctive relief.

The Court agrees.

"Mootness is a doctrinal restriction stemming from the Article III requirement that federal courts decide only live cases or controversies." In re Zarnel, 619 F.3d 156, 162 (2d Cir. 2010). "There is . . . no case or controversy, and a suit becomes moot, when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome." Chafin v. Chafin, 568 U.S. 165, 172 (2013). For example, "if in the course of litigation a court finds that it can no longer provide a plaintiff with any effectual relief, the case generally is moot." Uzuegbugnam v. Preczewskim, 141 S. Ct. 792, 796 (2021).

An individual may only obtain injunctive relief under Title III of the ADA, not damages. Powell v. Nat'l Bd. of Med. Exam'rs, 364 F.3d 79, 86 (2d Cir. 2004). Absent a claim for injunctive relief, a Title III claim is moot. See, e.g., Brief v. Albert Einstein Coll. of Med., 423 F. App'x 88, 90 (2d Cir. 2011) (summary order).

In her motion for summary judgment, plaintiff withdraws her request for injunctive and declaratory relief. (Doc. #52, at 8 n.2). Her ADA claim is therefore moot.

Accordingly, plaintiff's ADA claim must be dismissed.

III.  <u>Rehabilitation Act Claim</u>

The parties assert there is no genuine dispute of material fact respecting plaintiff's Section 504 claim, and each side contends it is entitled to summary judgment.

The Court disagrees.

A.    <u>Legal Standard</u>

Section 504 of the Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be

excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."  29 U.S.C. § 794(a).

To establish a prima facie Section 504 claim, a plaintiff must show:  (i) she is an "individual with a disability" as defined by the Rehabilitation Act; (ii) she is "otherwise qualified" to participate in the "program or activity"; (iii) she was excluded from participating in such "program or activity" because of her disability; and (iv) the program receives federal financial assistance.  See Loeffler v. Staten Island Univ. Hosp., 582 F.3d 268, 275 (2d Cir. 2004).

Regulations implementing Section 504 mandate recipients of federal financial assistance that "provid[e] heath, welfare, or other social services or benefits, . . . may not, on the basis of handicap, . . . [p]rovide benefits or services in a manner that limits or has the effect of limiting the participation of qualified handicapped persons."  45 C.F.R. § 84.52(a)(4).  To that end, federal funding recipients with fifteen or more employees must "provide appropriate auxiliary aids to persons with impaired sensory, manual, or speaking skills, where necessary to afford such persons an equal opportunity to benefit from the service in question."  Id. § 84.52(d)(1) (emphasis added).[2]

To determine whether an auxiliary aid was "necessary" or whether the auxiliary aid provided was "appropriate" for a hospital patient, courts have looked to whether that patient could effectively communicate with hospital staff without any aid or with the aid provided, respectively.  See, e.g., Berry-Mayes v. N.Y. Health & Hosps. Corp., 2016 WL 8461191, at *8–9 (S.D.N.Y. Sept. 16, 2016), aff'd, 712 F. App'x 111 (2d Cir. 2018) (summary order); Viera v.

---

[2]      An auxiliary aid "may include brailled and taped material, interpreters, and other aids for persons with impaired hearing or vision."  45 C.F.R. § 84.52(d)(3).

City of New York, 2017 WL 3130332, at *15–16 (S.D.N.Y. July 21, 2017).  This is because an auxiliary aid is "not required to produce the identical result . . . for handicapped and nonhandicapped persons, but must afford handicapped persons equal opportunity to obtain the same result, to gain the same benefit, or to reach the same level of achievement, in the most integrated setting appropriate to the person's needs."  45 C.F.R. § 84.4(b)(2).

To establish entitlement to damages pursuant to Section 504, a plaintiff must show defendant acted with "deliberate indifference to the strong likelihood of a violation" of plaintiff's rights.  Loeffler v. Staten Island Univ. Hosp., 582 F.3d at 275.  That is, a plaintiff states a prima facie entitlement to damages when she shows "an official or policymaker" of defendant "had actual knowledge of discrimination against the plaintiff, had authority to correct the discrimination, and failed to respond adequately."  Biondo v. Kaledia Health, 935 F.3d 68, 74 (2d Cir. 2019).  An "official or policymaker" is a person who possesses "some discretion at a key decision point in the administrative process," which may "vary with the decision to be made."  Id. at 76.

B.    Analysis

Each side contends it is entitled to summary judgment on plaintiff's Section 504 claim because it is undisputed (i) whether defendant discriminated against plaintiff because of her disability, and (ii) whether defendant was deliberately indifferent to the strong likelihood of violating plaintiff's rights.

Both issues are addressed in turn.

1.    Necessary and Appropriate Auxiliary Aids

There are material factual disputes as to whether defendant provided plaintiff with necessary and appropriate auxiliary aids during her hospital stay.

10

As explained above, to determine whether an auxiliary aid was necessary or appropriate for hospital patients, courts look to whether a patient could effectively communicate with hospital staff either without any aid or with the aid provided.  This analysis "is inherently fact-intensive."  Luckey v. St. Luke's Cornwall Hosp., 2021 WL 4124840, at *5 (S.D.N.Y. Sept. 9, 2021).

Plaintiff offers evidence she could not effectively communicate with medical staff during her hospital stay and, as a result, an auxiliary aid such as VRI or in-person interpreter was necessary as a matter of law.  Namely, plaintiff refers to her sworn interrogatory response, deposition testimony, and declaration, and Bianchi's deposition testimony.

Defendant challenges the admissibility of plaintiff's offered evidence.  Specifically, defendant contends plaintiff's evidence is hearsay, manufactured to oppose summary judgment, and conclusory, and thus inadmissible.  Further, defendant offers its own evidence plaintiff could, and did, effectively communicate with hospital staff during her stay and thus an auxiliary aid was not necessary as a matter of law.

Defendant's challenges to plaintiff's evidence are without merit, and in light of defendant's own evidence to the contrary, there are thus genuine material issues of disputed material facts that preclude summary judgment in favor of either party.

First, defendant's hearsay arguments are misguided.  Defendant is correct plaintiff's interrogatory responses and declaration themselves would be inadmissible at trial to prove the truth of the matters asserted—specifically, that plaintiff felt uncomfortable with Bianchi interpreting during her hospital stay and withheld questions as a result.  However, the content of those materials would be admissible at trial in the form of plaintiff's live testimony.  See, e.g., Murphy v. Metro. Transp. Auth., 548 F. Supp. 2d 29, 42–44 (S.D.N.Y. 2008) (civilian

complaints and internal affairs records admissible on summary judgment when "[p]laintiff

appears able to identify and subpoena all of the relevant declarants reported in the public

records"); In re Rezulin Prods. Liab. Litig., 361 F. Supp. 2d 268, 272 (S.D.N.Y. 2005)

(interrogatory responses admissible on summary judgment).

Second, the rule that "factual issues created solely by an affidavit crafted to oppose a

summary judgment motion are not genuine issues for trial" does not apply here.  Hayes v.

N.Y.C. Dep't of Corr., 84 F.3d 614, 619 (2d Cir. 1996).  For one, plaintiff's declaration

explaining she felt uncomfortable with Bianchi interpreting for her is consistent with her

interrogatory responses stating the same, her deposition testimony that she requested an

interpreter in the hospital, and Bianchi's deposition testimony that both she and plaintiff

repeatedly requested an interpreter in the hospital.  For another, plaintiff's declaration, although

brief, satisfies all the requirements of Rule 56—it was "made on personal knowledge, set[s] out

facts that would be admissible in evidence, and show[s] that [plaintiff] is competent to testify on

the matters stated."  Fed. R. Civ. P. 56(c)(4).

Third, plaintiff's evidence is not so conclusory that it must be disregarded on summary

judgment.  Defendant contends that, because plaintiff and Bianchi cannot remember the name,

gender, or identifying characteristics of any healthcare providers from whom they requested an

interpreter, their deposition testimony cannot be credited.  In other words, defendant argues that

plaintiff and Bianchi's sworn testimony on this point is not credible and should be disregarded.

Defendant may well be correct that a finder of fact will find this testimony not credible.  But

witness credibility must be decided by the fact finder, not by a court on summary judgment.  See,

e.g., Wright v. N.Y.S. Dep't of Corr., 831 F.3d 64, 74–75 (2d Cir. 2016).

Accordingly, summary judgment is inappropriate on this issue.

2.     Deliberate Indifference

There are also material factual disputes as to whether defendant was deliberately indifferent to a likely violation of plaintiff's rights and thus whether plaintiff is entitled to compensatory damages.

A plaintiff is entitled to compensatory damages under Section 504 when she shows "an official or policymaker" of defendant "had actual knowledge of discrimination against the plaintiff, had authority to correct the discrimination, and failed to respond adequately."  Biondo v. Kaledia Health, 935 F.3d at 74.

Here, it is genuinely disputed whether defendant "had actual knowledge of discrimination against the plaintiff."  Biondo v. Kaledia Health, 935 F.3d at 74.  Each side offers admissible, plausible, and substantiated evidence in support of its position.  Plaintiff offers her and Bianchi's testimony that they requested an interpreter from multiple hospital staff but none was provided.  Defendant offers testimony by multiple hospital staff that Bianchi volunteered to interpret for plaintiff, plaintiff preferred that Bianchi interpret, and neither of them ever requested an interpreter.  Moreover, defendant points to undisputed evidence that plaintiff regularly brought Bianchi to medical appointments to interpret, and that plaintiff's medical records do not contain any indication interpretive services were requested.

Again, the Court cannot credit the testimony of one witness over another, or determine the credibility of any witness, on summary judgment.  Fincher v. Depository Tr. & Clearing Corp., 604 F.3d at 725–26.  As a result, summary judgment is inappropriate on this issue.[3]

Accordingly, the parties' motions for summary judgment on plaintiff's Section 504 claim must be denied.

IV.   Affordable Care Act Claim

Each side contends it is entitled to judgment as a matter of law on plaintiff's ACA claim. The Court disagrees.

A.   Legal Standard

Section 1557 of the ACA provides that "an individual shall not . . . be excluded from participation in, be denied the benefits of, or be subjected to discrimination under, any health program or activity, any part of which is receiving Federal financial assistance."  42 U.S.C. § 18116(a).

For the most part, ACA Section 1557 claims are analyzed identically to Rehabilitation Act Section 504 claims.  Vega-Ruiz v. Montefiore Med. Ctr., 2019 WL 3080906, at *3 n.3 (S.D.N.Y. July 15, 2019) ("[B]ecause Section 1557 explicitly incorporates Section 504 of the

---

[3]      For the first time on reply, defendant argues that, even if plaintiff or Bianchi did request an interpreter from the healthcare providers who examined plaintiff, this would not constitute deliberate indifference by defendant because these healthcare providers were not "officials" or "policymakers."  (Doc. #60, at 21–22).  The Court need not consider an argument made for the first time on reply.  Pettaway v. Nat'l Recovery Sols., LLC, 955 F.3d 299, 305 n.2 (2d Cir. 2020) (per curiam).  Moreover, the evidence before the Court suggests defendant is incorrect.  An "official or policymaker" must "ha[ve] authority to address the alleged discrimination and to institute corrective measures on the [defendant]'s behalf."  Biondo v. Kaledia Health, 935 F.3d at 76.  Defendant asserts its "physicians and clinical staff were able to access sign language interpreters around-the-clock when needed to communicate effectively with patients who are deaf" (Doc. #49, ¶ 9), meaning these healthcare providers could address plaintiff's concerns and correct them, namely, by supplying an interpreter.

Rehabilitation Act, the Court need not conduct an independent analysis of Plaintiff's ACA claim.").

However, the regulations implementing the ACA and the Rehabilitation Act differ.  ACA regulations provide an entity operating covered health programs or activities "shall take appropriate steps to ensure that communications with individuals with disabilities are as effective as communications with others in such programs or activities, in accordance with" certain ADA regulations.  45 C.F.R. § 92.102(a); accord Vega-Ruiz v. Northwell Health, 992 F.3d 61, 65–66 (2d Cir. 2021) (per curiam).

Under those ADA regulations, a covered entity must "give primary consideration to the requests of individuals with disabilities" when "determining what types of auxiliary aids and services are necessary."  28 C.F.R. § 35.160(b)(2).  To afford an individual "primary consideration" means the individual's choice of auxiliary aid must be honored unless the entity "can demonstrate that another equally effective means of communication is available or that the aid or service requested would fundamentally alter the nature of the program, service, or activity or would result in undue financial and administrative burdens."  See Hernandez v. N.Y.S. Bd. of Elections, 479 F. Supp. 3d 1, 12 (S.D.N.Y. 2020) (quoting interpretive guidance).

Applicable ADA regulations further provide healthcare providers "shall not rely on an adult accompanying an individual to interpret or facilitate communication," with two exceptions. 28 C.F.R. § 35.160(c)(2)(ii).

The first exception is for "imminent threats."  A healthcare provider may rely on an accompanying adult to interpret "[i]n an emergency involving an imminent threat to the safety or welfare of an individual or the public where there is no interpreter available."  28 C.F.R. § 35.160(c)(2)(i).  In its interpretive guidance, the Department of Justice ("DOJ") "emphasize[s]

. . . that application of this exception is narrowly tailored to emergencies involving an imminent threat to the safety or welfare of individuals or the public." 28 C.F.R. pt. 36, app. A, at 822. The DOJ further explains:

> Arguably, all visits to an emergency room are by definition emergencies. . . . The imminent threat exception . . . is not intended to apply to typical and foreseeable emergency situations that are part of the normal operations of these institutions. As such, a public accommodation may rely on an accompanying individual to interpret or facilitate communication under the . . . imminent threat exception only where there is a true emergency, i.e., where any delay in providing immediate services to the individual could have life-altering or life-ending consequences.

Id.

The second exception is for consent. A healthcare provider may rely on an accompanying adult to interpret when "the individual with a disability specifically requests that the accompanying adult interpret or facilitate communication, the accompanying adult agrees to provide such assistance, and reliance on that adult for such assistance is appropriate under the circumstances." 28 C.F.R. § 35.160(c)(2)(ii). In its interpretive guidance, the DOJ "states unequivocally" that such consent "must be provided freely and voluntarily both by the individual with a disability and the accompanying adult" and " the public accommodation should first offer to provide appropriate auxiliary aids and services free of charge." 28 C.F.R. pt. 36, app. A, at 821.

B.    Analysis

Here, there are genuine factual disputes as to whether defendant properly relied on plaintiff's daughter to interpret for plaintiff. Namely, it is disputed (i) whether defendant properly accorded plaintiff's choice of auxiliary aid "primary consideration"; and (ii) whether the consent exception to the prohibition on relying on an individual's companion to interpret applies here.

First, defendant offers evidence it <u>did</u> afford plaintiff's choice of aid primary consideration—that is, defendant offers testimony by hospital staff that plaintiff wanted Bianchi to interpret.  But plaintiff offers evidence to the contrary—for example, that plaintiff requested a professional interpreter instead of Bianchi, and her requests were ignored or deferred by hospital staff.

Second, there are factual disputes as to whether plaintiff and Bianchi "freely and voluntarily" consented to Bianchi serving as interpreter.  28 C.F.R. pt. 36, app. A, at 821.  As explained throughout this Opinion and Order, the parties offer competing evidence on whether plaintiff requested that Bianchi interpret and whether Bianchi volunteered to interpret.

Moreover, there are factual disputes as to whether it was appropriate for defendant to rely on Bianchi's interpretation.  On the one hand, defendant offers evidence it acted appropriately in relying on Bianchi given her professional experience as an interpreter, and considering that Bianchi routinely interpreted for plaintiff during prior doctor's visits.  On the other hand, plaintiff offers evidence defendant's reliance on Bianchi was inappropriate given Bianchi's lack of professional experience interpreting in a medical setting and the seriousness of the situation.  In addition, plaintiff asserts the mere fact Bianchi is her daughter means it was <u>per</u> <u>se</u> inappropriate for defendant to rely on Bianchi's interpretation during plaintiff's hospital stay.

In other words, there are genuine issues of material fact as to whether defendant properly relied on Bianchi's interpretation.[4]

Accordingly, the parties' motions for summary judgment on plaintiff's ACA claim must be denied.

V.    New York State Human Rights Law Claim

Each side asserts there is no genuine dispute of material fact respecting plaintiff's NYSHRL claim and that it is entitled to summary judgment.

The Court disagrees.

The NYSHRL prohibits discrimination on the basis of disability in "any place of public accommodation."  N.Y. Exec. Law § 296(2)(a).  The NYSHRL "must be liberally construed to accomplish the purposes of the statute," that is, "to ensure that every person in [New York] has an equal opportunity to enjoy a full and productive life," including "the opportunity to obtain adequate health care."  Cahill v. Rosa, 89 N.Y.2d 14, 20 (1996).

NYSHRL claims are coextensive with Rehabilitation Act Section 504 claims, see Williams v. City of New York, 121 F. Supp. 3d 354, 364 n.10 (S.D.N.Y. 2015), except under the NYSHRL a plaintiff need not demonstrate defendant's deliberate indifference to recover damages.  Cullen v. Nassau Cnty. Serv. Comm'n, 53 N.Y.2d 492, 496 (1981); accord Vega-Ruiz v. Montefiore Med. Ctr., 2019 WL 3080906, at *5.  As a result, for the same reasons summary

---

[4]    For the first time on reply, defendant contends there was an "imminent threat" such that reliance on Bianchi's interpretation was justified.  Defendant cites to triage nurse Sinkkonen's deposition testimony that, based on her brief assessment of plaintiff, plaintiff had symptoms of a "life-threatening" illness, such as a heart attack or stroke.  (See Sinkkonen Dep. at 13–15).  Again, the Court need not consider an argument made for the first time on reply.  See Pettaway v. Nat'l Recovery Sols., LLC, 955 F.3d at 305 n.2.  Moreover, it appears disputed whether there truly was an "imminent threat."  For example, Dr. Basak testified at her deposition that plaintiff's situation was "not life-threatening."  (Doc. #53-11, at 26).

judgment is inappropriate on plaintiff's Section 504 claim, summary judgment is inappropriate on plaintiff's NYSHRL claim.

Accordingly, the parties' motions for summary judgment on plaintiff's NYSHRL claim must be denied.

## CONCLUSION

Defendant's motion for summary judgment is GRANTED IN PART and DENIED IN PART.

Plaintiff's cross-motion for summary judgment is DENIED.

Plaintiff's ADA claim is dismissed.  Plaintiff's other claims may proceed.

The Court will conduct a case management conference on **February 23, 2022, at 11:00 a.m.,** at which time the parties shall be prepared to discuss, among other things, the setting of a trial date and a schedule for pretrial submissions, as well as what efforts they have made and will make to settle this case.  The conference will be held in person at the White Plains courthouse, courtroom 620.

The Clerk is instructed to terminate the motion.  (Doc. #47).

Dated: February 1, 2022
       White Plains, NY

                              SO ORDERED:



                              _____
                              Vincent L. Briccetti
                              United States District Judge